FEE PAID
N/S

**ERIC TESCHKE**
10373 Harrier St
Plantation, FL 33324
Tel.: (586) 770-2153
Email: ericteschh@gmail.com
Plaintiff, Pro Se

**MARGUERITE TESCHKE**
41766 Westbury Ln
Clinton Township, MI 48038
Tel.: (586) 531-0423
Email: magger53@gmail.com
Plaintiff, Pro Se

FILED
CLERK, U.S. DISTRICT COURT
11/18/2026
CENTRAL DISTRICT OF CALIFORNIA
BY mba DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

**ERIC TESCHKE**, an individual, as sole beneficial owner of the Roth IRA (account ending 7237) held by Inspira Financial Trust, LLC f/b/o Eric Teschke Roth IRA; and **MARGUERITE TESCHKE**, an individual, as sole beneficial owner of the Roth IRA (account ending 7238) held by Inspira Financial Trust, LLC f/b/o Marguerite Teschke Roth IRA,

Plaintiffs,

v.

**WORLD TREE USA, LLC**, a Nevada limited liability company; **WORLD TREE TECHNOLOGIES, INC.**, a Nevada corporation; **ANGELA BURTON**, also known as Angela Nauta, an individual; **DOUGLAS WILLMORE**, an individual; and DOES 1–10,

Defendants.

Case No.: 8:26-cv-03425-FWS (KESx)

**COMPLAINT FOR:**

1. Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5;

2. Violation of Section 20(a) of the Exchange Act (control-person liability);

3. Violation of California Corporations Code §§ 25401 and 25501;

4. Violation of California Corporations Code §§ 25504 and 25504.1;

5. In the alternative: Violation of the Florida Securities and Investor Protection Act, Fla. Stat. §§ 517.301 and 517.211;

6. Common-law fraud and fraudulent concealment;

7. Negligent misrepresentation.

**DEMAND FOR JURY TRIAL**

## I. NATURE OF THE ACTION

1. Plaintiffs Eric Teschke and his mother, Marguerite Teschke, bought non-voting "Series A Eco-Tree 2021" Units (the "Units") of World Tree USA, LLC (the "Company") through their self-directed IRAs, in a single family order of 80,000 Units at $1.70 per Unit ($136,000) that the Company's investor-relations director negotiated with Eric Teschke in November 2021 and that the Company countersigned. The Units were then issued into the two IRAs: 20,000 Units ($34,000) for Eric Teschke's Roth IRA and 60,000 Units ($102,000) for Marguerite Teschke's IRA. The Units were sold in a Rule 506(c) private placement.

2. The day before the first subscription was signed, Eric Teschke asked in writing what would happen if the company dissolved or went bankrupt. The Company's investor-relations representative replied in writing that the LLC "has no question of bankruptcy or insolvency," "doesn't have any debt or obligations - only assets," and "is entirely owned by the investors, not by World Tree."

3. Those statements were false or materially misleading:

- The Company's Manager, defendant World Tree Technologies, Inc. ("WTT"), holds 100% of the Company's voting units.
- WTT controls distributions and holds the farmer contracts on which the trees depend.
- WTT cannot be removed except by its own vote.
- The Company was dependent on WTT and on raising new capital, and its auditor had expressed going-concern doubt.

4. The Company also represented that the trees for the 2021 series would be planted within 12 months of receipt of funds. By its own reports, about 24% of the series' trees were still unplanted at the end of 2022, and planting was not completed until mid-2024.

5. Each Plaintiff seeks rescission of his or her own purchase, or rescissory damages (Eric Teschke: $34,000; Marguerite Teschke: $102,000), plus interest, costs and other relief. Each Plaintiff sues only on his or her own claims; neither represents the other.

## II. PARTIES

### A. Plaintiffs

6. **Plaintiff Eric Teschke** is an individual who resides at 10373 Harrier St, Plantation, Florida 33324.

- At the time of his purchase (November 2021 – February 2022), he was domiciled at 4333 SW 25th Pl, Cape Coral, Florida. His subscription documents list that Cape Coral address, and in Section 5(i) of the Subscription Agreement he represented that he maintained his domicile there.
- Defendants directed their solicitations, the November 17, 2021 email, and the DocuSign subscription package to him in Florida, and he signed the subscription agreements in Florida. He was physically present in Florida on November 16, 17 and 18, December 2 and December 8, 2021, and January 19, 2022.
- He purchased through a self-directed Roth IRA (account ending 7237) at NuView Trust Company, Inc. The Units are titled "NuView Trust Company, Inc. FBO Eric Teschke." He is the sole beneficial owner of the IRA and the Units.

7. **Plaintiff Marguerite Teschke** is an individual who maintains residences in Florida and Michigan. Her mailing address is 41766 Westbury Ln, Clinton Township, Michigan 48038.

- She purchased through a self-directed Roth IRA (account ending 7238) at NuView Trust Company, Inc. Her subscription signature page records the Units as held by "NuView Trust Company, Inc.

FBO Marguerite Teschke." She is the sole beneficial owner of the IRA and the Units.

- She divides her time between her Florida home and her Michigan home, spending summers in Michigan. From November 2021 through January 31, 2022, including when Defendants solicited her and when she signed her subscription documents, she was living at her Florida home. Her IRA account statements and custodial papers, including her January 2022 NuView documents, were sent to her Michigan mailing address.

8. **Custodian; real party in interest.** The IRA custodian for both Plaintiffs, formerly NuView Trust Company, Inc., is now Inspira Financial Trust, LLC ("Inspira"), Oak Brook, Illinois. Its accounts are titled "Inspira Financial Trust, LLC f/b/o" followed by the account holder's name. Each Plaintiff is the sole beneficial owner of his or her IRA and brings this action as the real party in interest for that account only. Any recovery for a Plaintiff will be paid into that Plaintiff's IRA at Inspira, not to the Plaintiff personally. To the extent the Court deems the custodian a real party in interest, each Plaintiff requests a reasonable time under Fed. R. Civ. P. 17(a)(3) to obtain ratification by, or joinder or substitution of, Inspira as custodian for his or her account.

**B. Defendants**

9. **Defendant World Tree USA, LLC** (the "Company") is a Nevada limited liability company (SEC CIK 1687316).

- Principal executive office: 2020 Main Street, Suite 1200, Irvine, California 92614 (FY2025 Form 1-K, filed May 18, 2026).
- Other addresses used: 2447 Pacific Coast Highway, 2nd Floor, Hermosa Beach, California 90254; and, at the time of the sales, c/o WTT, 2361 Rosecrans Ave., Suite 475, El Segundo, California 90245.
- Registered agent (Operating Agreement § 2.3): Maupin, Cox & Legoy, P.C., 4785 Caughlin Parkway, Reno, Nevada 89519.
- The Company was the issuer and seller of the Units.

10. **Defendant World Tree Technologies, Inc.** ("WTT") is a Nevada corporation (SEC CIK 1172134; state of incorporation per WTT's 2023 Form D). WTT's 2023 Form D lists 401 Ryland Street, Reno, Nevada; the PPM (p. 73) gave 2361 Rosecrans Ave., El Segundo, California.

- WTT is the Company's Manager.
- It holds all of the Company's voting Series B Units: 10,000 Series B Units, "100 %" of the class (PPM p. 73); "All Series B Units have been issued and are held by the Manager" (FY2025 Form 1-K, Note 5, p. F-13).

• It contracts with the farmers who grow the Company's trees: "Each Farmer's engagement is documented in a Crop Contracting Agreement between the Manager and such Farmer" (FY2025 Form 1-K p. 26; PPM p. 29).

11. **Defendant Angela Burton**, also known as Angela Nauta, is an individual who on information and belief resides in British Columbia, Canada. She was the Company's and/or WTT's "Director – Investor Relations." In 2020 she signed as "Angela Nauta, Chief Eco-Tree Investment Officer" and "Angela Nauta, Chief Investment Officer," using angela@worldtree.info and the same phone numbers later used by Angela Burton. She solicited the family purchase and made the statements alleged below.

12. **Defendant Douglas Willmore** is, on information and belief, an individual residing in California. He is the Chief Executive Officer and Co-Chairman of WTT and the Company. World Tree USA's 2025 Form D (accession 0001644600-25-000018) lists him as Executive Officer and Director with a Los Angeles, California address, and WTT's 2023 Form D lists him as an Executive Officer.

13. Plaintiffs do not know the true names and capacities of the defendants sued as DOES 1–10, who on information and belief are officers, employees or

agents of the Company or WTT who participated in or controlled the conduct alleged here. Plaintiffs will seek leave to amend when they are identified.

## III. JURISDICTION, VENUE AND JOINDER

14. **Federal claims.** This Court has subject-matter jurisdiction over Counts 1–2 under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

15. **State-law claims.** This Court has supplemental jurisdiction over the remaining counts under 28 U.S.C. § 1367(a), because they form part of the same case or controversy.

16. **Venue.** Venue is proper in this District and in the Southern Division under 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b):

- The Company's principal executive office is at 2020 Main Street, Suite 1200, Irvine, California, in Orange County (FY2025 Form 1-K, filed May 18, 2026). Orange County is in the Southern Division.
- Defendants reside, are found, or transact business in this District, and on information and belief the offering was organized and directed from California, including the Company's then-office in El Segundo.

17. **Forum-selection clause.** Section 8 of each Plaintiff's Subscription Agreement provides that the parties consent to "the jurisdiction of any state or federal court of competent jurisdiction located within the State of California and no other place." This Court is such a court. The amended Operating Agreement filed with the Company's offering statement names the state and federal courts sitting in Mesa, Arizona (§ 13.5(a)), but expressly provides that § 13.5(a) does "not apply to actions and claims brought under the United States federal securities laws" (§ 13.5(b)).

18. **Personal jurisdiction.** The Court has personal jurisdiction over each Defendant under 15 U.S.C. § 78aa (nationwide service of process), under the Company's consent in Section 8, and because each Defendant directed the conduct alleged here from or into California.

19. **Joinder of Plaintiffs.** Plaintiffs properly join in one action under Fed. R. Civ. P. 20(a)(1). Their rights to relief arise out of the same transaction, occurrence, or series of transactions: a single family order for 80,000 Units negotiated by the same Company representative, priced in one email, documented in subscription agreements countersigned by the Company, and then issued into Plaintiffs' two IRAs. Common questions of law and fact include the falsity of the Company's statements about ownership, control,

solvency and planting; Defendants' scienter; the effect of the Subscription Agreement and PPM disclaimers; and the Company's financial condition.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

### A. The offering

20. The Company offered Series A Eco-Tree 2021 Units under a Confidential Private Placement Memorandum dated March 23, 2021 (the "PPM"), in a Rule 506(c) offering. The proceeds were to be used to buy, plant and cultivate Empress Splendor (Paulownia) trees on farms run by contracted farmers, for harvest in about 10–14 years.

21. The PPM defines the "2021 ES Crop" as trees "to be planted within 12 months after receipt" of the investment. It states: "The Company will plant trees within 12 months of receipt of funds" (PPM p. 1 (cover); p. 26); and "all trees will be planted within 12 months of the investment date" (PPM p. 62).

22. The Company's Form D for the offering named C2M Securities, LLC as the recipient of sales compensation. C2M processed investor profiles and accreditation. C2M ceased business on December 29, 2025. C2M is not named here.

23. **Governance.** Under the Company's Operating Agreement and its SEC filings:

- Series A Units are "non-voting" (PPM p. 1; Subscription Agreement § 1(a)).
- WTT holds all of the voting Series B Units ("All Series B Units have been issued and are held by the Manager").
- Series A holders "will not have the right to vote for removal of our Manager" (PPM p. 74). Removal for cause requires two-thirds of the Series B Units, all of which WTT holds.
- WTT makes distributions "in its sole discretion" (Operating Agreement § 4.1(a)).
- WTT disclaims any fiduciary duty: "Our Manager maintains a contractual, as opposed to a fiduciary relationship, with us and our Unit holders" (FY2025 Form 1-K p. 40); the Manager may "consider only such interests and factors as it desires, including its own interests" (Operating Agreement § 5.6).
- The Manager is paid "a management fee of $4.00 per tree" and "also receives up to 50% of the Net Profits upon Harvest"; the trees are "directly purchased from the Manager" (PPM pp. 28–29).

**B. The solicitation and the misstatements**

24. **First contacts (2020).** Angela Burton, then signing as "Angela Nauta," first solicited Eric Teschke by Zoom and text: an October 8, 2020 "Eco-

Tree Consultation" Zoom call with "Angela Nauta, Chief Eco-Tree Investment Officer," and a November 6, 2020 Zoom call after he expressed interest in investing through his company.

25. **November 16, 2021 consultation.** On November 16, 2021, at 4:30 PM ET, Ms. Burton held an "Eco-Tree Consultation" video call with Eric Teschke. The same day he was sent a DocuSign package containing the "World Tree 2021 Reg D Sub Agreement," and that evening she texted that "DocuSign has been sent - yahoo!!!"

26. **The insolvency question.** Just after midnight Eastern time on November 17, 2021, Eric Teschke asked in writing: "If the company is dissolved before my trees are sold, what happens? … If the company files for bankruptcy restructuring and continues, what happens to my shares?"

27. **The answer.** On November 17, 2021, the Company's "Investor Support" account (ecotreeinvestor@worldtree.eco), signed "Angela," replied (Ex. 1):

> "The trees have value even before they are sold at harvest. The value grows as the trees grow. The LLC that you are investing in has no question of bankruptcy or insolvency. It doesn't have any debt or obligations - only assets. And, the LLC is entirely owned by the investors, not by World Tree. The assets could be sold to another company with the investors receiving the revenue, or the LLC could contract with any other company to do the harvesting and milling of the wood. … being a part owner in an LLC that has all the

> assets, and no debts or liabilities makes that an easy equation."

28. **"Take to the bank."** On November 18, 2021, Ms. Burton wrote that "your trees will get planted in every location" and sent the PPM, saying "whatever is in these documents you can take to the bank" (Ex. 2). On November 19 she added: "All of your questions will be answered in this document." On December 6, 2021 she texted: "Your subscription agreement is attached to the PPM and included in the PPM all of these promises are in there… this document promises to fulfill on all of this."

29. **The family order.** On November 19, 2021, Eric Teschke told Ms. Burton in writing that "my family would like to invest an additional $100,000 into the program." On November 29, 2021, Ms. Burton confirmed in writing: "40 acres (80,000 units) x $1.70 per unit = $136,000," explained that IRA accounts would be opened at NuView Trust and the units re-issued "into the correct account names," and wrote that she looked forward to welcoming Eric "and your parents into the World Tree Eco-Tree 2021 Investment Program." Defendants therefore knew, before any family subscription was signed, that the order included purchases for Eric Teschke's parents.

30. **The combined subscription.** A subscription agreement for 80,000 Units / $136,000 titled "Eric Teschke and Marguerite Teschke" was completed through DocuSign on December 2, 2021, and a revised version titled "Eric

Teschke" was countersigned for the Company by its CFO/CAO, Deborah Cullen, on December 8, 2021. That day Ms. Burton texted, "are you able to sign the agreement today?" and "I won't be able to hold this price for you after the webinar."

31. **Split into two IRAs.** On December 17, 2021, NuView sent Ms. Burton (copying Eric Teschke) the asset titling for the two accounts, "NuView Trust Custodian FBO Eric Teschke IRA" and "NuView Trust Custodian FBO Marguerite Teschke." The 80,000 Units were divided: 20,000 Units ($34,000) to Eric Teschke's Roth IRA and 60,000 Units ($102,000) to Marguerite Teschke's IRA.

32. **Escrow.** Under Section 3 of the Subscription Agreement (p. 6 of 17), purchase funds were to be wired to the escrow agent, Atlantic Capital Bank, N.A. (account ending 3845), and "remain in escrow until the subscription is accepted."

**C. The statements were false and misleading when made**

33. **"Entirely owned by the investors, not by World Tree."** False or materially misleading. WTT owned 100% of the voting interest in the LLC (PPM p. 73; FY2025 Form 1-K Note 5, p. F-13); controlled whether and when any distribution would be made; held the farmer contracts; could not be removed by the investors; and was entitled to half of the Company's profit share

from every series. In answer to a question about what would happen if the company failed, omitting WTT's control made the statements misleading.

34. **"No question of bankruptcy or insolvency … no debt or obligations - only assets."** False or materially misleading. The Company had never had revenue; it was dependent on WTT, which in turn depended on the Company's ability to raise new capital; and its own PPM disclosed that its auditor had expressed substantial doubt about its ability to continue as a going concern and that "the Company has significant commercial and economic dependence on World Tree Technologies, Inc., our Manager," with its survival "dependent upon its ability to obtain capital financing from Investors" (PPM p. 16). Defendants knew these facts, or were reckless in not knowing them.

35. **"The LLC could contract with any other company."** Misleading. Only the Manager can act for the LLC, the farmer contracts belong to WTT (FY2025 Form 1-K p. 26), and the investors cannot replace WTT (PPM p. 74).

36. **The 12-month planting representation.** False or made without a reasonable basis. The 2021 series planting target was 201,583 trees. The Company reported 153,721 planted and 47,862 (about 24%) "still to be Planted" at December 31, 2022 (FY2022 Form 1-K, filed Oct 5, 2023) and still at June 30, 2023 (Form 1-SA H1 2023); planting was not completed until the first half of 2024 (201,607 planted at June 30, 2024, Form 1-SA H1 2024). On

information and belief, Defendants knew by the time of the sales that they lacked the tree supply or farm capacity to plant within 12 months.

37. **Later disclosures.** The Company's FY2025 Form 1-K, filed May 18, 2026, discloses:

- (a) Its auditor, dbbmckennon (report dated May 18, 2026), again stated that the Company "has incurred losses since inception, lacks revenues and requires additional capital to fund operations. These factors raise substantial doubt about the Company's ability to continue as a going concern" (p. F-2); and "WTT has limited cash flow generating activities and their operations are currently dependent on the Company's ability to raise capital" (Note 2, p. F-9).
- (b) An emphasis-of-matter paragraph: "at times, the Company has paid to the Manager amounts in excess of management fees contractually due to cover overhead and other costs incurred by the Manager in connection with their duties" (p. F-2). The amount is not disclosed.
- (c) "Management fees and operating costs – related party" of $1,364,672 in 2024 and $1,167,343 in 2025 (p. 34); 240,000 units ($360,000) in 2024 and 250,000 units ($375,000) in 2025 issued as

"Non-cash membership units issued on behalf of Manager" (p. F-6); and $861,449 "paid/advanced … to WTT representing current and future management fees" by May 18, 2026 (Note 6, p. F-14).

- (d) "To date, the Company has not had any revenues. The Company expects to harvest its first plantation inside of the Eco-Tree Program in 2027" (p. 34), while the going-concern note still says "the first harvest isn't anticipated until 2026" (p. F-9).
- (e) Reported survival for the 2021 series fell from 85% (FY2023 1-K) to 77% (FY2024 1-K) to 69.1% (FY2025 1-K, p. 38).
- (f) Despite the PPM's statement that "existing investors will not have their interests diluted" (PPM p. 21), the Subscription Agreement says "future offerings of Securities may be made at lower valuations" (§ 5(h), p. 10), and the PPM lets the Company "lower the Unit price at its sole discretion" (PPM p. 12).

38. **No accounting.** No series-level ledger for the 2021 series (which raised $5,802,539 for 3,665,139 Units, FY2025 Form 1-K) has been provided showing what went to tree purchases from WTT, management fees, farmer payments, or reserves; no geo-tagged tree records or farm assignments; and no

NAV statement under Operating Agreement § 5.12. No specific trees or farms have been assigned to either Plaintiff.

39. **Later solicitations.** Defendants kept soliciting both Plaintiffs. On May 22, 2023, Mr. Willmore wrote to Marguerite Teschke "as one of our top 20 investors in the Eco-Tree Program." On July 30, 2025, Ms. Burton offered both Plaintiffs more units at "our preferred rate of $1.80/unit before it increases to $2.00," adding that "demand for this kind of wood is about to surge." Neither Plaintiff bought more Units; Eric Teschke declined in writing on August 17, 2025.

**D. Scienter**

40. Defendants acted with intent to deceive or with deliberate recklessness:

- (a) WTT's 100% voting control and its ownership of the farmer contracts were set out in Defendants' own governing documents; the person answering for the Company had to know them.
- (b) The going-concern doubt appeared in the Company's own PPM, yet Defendants said there was "no question of bankruptcy or insolvency."

- (c) The statements answered a specific written question about insolvency and control, to close a sale the same day, and Defendants then expanded that sale to include Plaintiffs' family.
- (d) WTT benefited directly from new investor money through management fees, tree sales to the Company, and other payments.
- (e) Defendants pressed for speed: "are you able to sign the agreement today?" and "I won't be able to hold this price for you after the webinar. We have over 1000 people registered" (texts, Dec 8, 2021); "You'll have to run with this one if you want to get in - Monday is the last day!" (text, Jan 27, 2022).

## V. FACTS SPECIFIC TO PLAINTIFF ERIC TESCHKE

41. **Reliance.** Eric Teschke replied to the November 17, 2021 email, "Thank you! I'm signing now…" (Nov 18, 2021, 00:41 EST), and signed his first subscription agreement (16,500 Units, $29,700), which DocuSign marked completed on November 18, 2021. He then signed the revised subscription agreements of December 2 and December 8, 2021 (¶ 30).

42. **Dilution assurance.** On November 19, 2021, he asked that the subscription define a "unit" and wrote: "This concerns me as units could be diluted over time so I want to make sure 2000 units = 1 acre or something of that nature in paper that I can sign and agree to." Ms. Burton replied ten

minutes later: "Yes it does Eric, On our call at 10:30 – let's jump on a zoom call and I'll show you where it is…" On the Zoom call that followed on November 19, 2021, Ms. Burton told him, in substance, that his Units would not be diluted, consistent with her written "Yes it does Eric" reply. The PPM she pointed to states that "existing investors will not have their interests diluted" (PPM p. 21).

43. **Custodian's purchase.** On January 19, 2022, his IRA custodian (NuView) signed the subscription for 20,000 Units / $34,000 at his direction (NuView TRANS-657634). On January 31, 2022, NuView confirmed that "$34,000.00 will be sent via Domestic Wire to World Tree USA LLC by 4:00 p.m. on 2/1/2022." On February 1, 2022, Ms. Burton texted: "Celebrate 🍾 just got confirmation that the funds landed in the WT Escrow account !" (Ex. 4).

44. **His share.** His 20,000 Units are about 0.55% of the 3,665,139 Units in the 2021 series: pro rata, about 1,100 trees planted and about 760 alive at the reported 69.1% survival. He has received no distributions.

45. **Fees.** He paid custodial and transaction fees caused by the purchase, including a $95 asset purchase fee, a $295 annual asset fee and a $30 outgoing wire fee (all dated Jan 31, 2022; paid Feb 4, 2022), and later annual asset fees of $125 (Dec 2023), $125 (paid Dec 10, 2024) and $325 (charged Jan 1, 2026). To the best of Plaintiff's recollection, and on information and belief, the

December 2023 $125 fee and the January 2026 $325 fee were paid. Based on the amounts listed in this paragraph, these fees total approximately $995.

## VI. FACTS SPECIFIC TO PLAINTIFF MARGUERITE TESCHKE

46. **Her purchase.** Marguerite Teschke's NuView transaction TRANS-657647 consisted of a NuView purchase authorization for 60,000 Units of World Tree USA, LLC at $1.70 per Unit, "Total Investment 102000," and a Subscription Agreement signature page subscribing for 60,000 Series A Eco-Tree 2021 Units for $102,000.00, recorded as held by "NuView Trust Company, Inc. FBO Marguerite Teschke" and signed for the Company by Deborah Cullen, CFO/CAO. The DocuSign package was sent to her on January 19, 2022 and completed on or about January 20, 2022. On January 28, 2022, NuView notified her that the documents were "In Good Order" and that her "purchase request for World Tree USA, LLC is now being sent to compliance for funding." NuView's records show a purchase date of January 31, 2022, 60,000 Units held, and a book value of $102,000.00. Her account ending 7238 is the only account at issue for her.

47. **Direct contact by Ms. Burton.** Before Marguerite Teschke signed on or about January 20, 2022, Defendant Burton contacted her directly about the investment.

48. **The November 17, 2021 statements.** Before she signed on or about January 20, 2022, Marguerite Teschke received the November 17, 2021 email (¶ 27), including the statements that the LLC "has no question of bankruptcy or insolvency" and "is entirely owned by the investors, not by World Tree," which Eric Teschke forwarded to her.

49. **Other assurances.** Before she signed, Marguerite Teschke also received or heard Defendants' assurances that (a) the trees would be planted within 12 months of receipt of funds; (b) whatever was in the offering documents "you can take to the bank"; (c) investors' Units would not be diluted; and (d) the investment was safe.

50. **Reliance.** In deciding to invest $102,000, Marguerite Teschke relied on Ms. Burton's statements alleged in ¶¶ 47–49 and on the due diligence of her son, Eric Teschke, which was itself based on the statements Defendants made to him (¶¶ 26–30, 42). She would not have invested had she known that WTT held all of the Company's voting control and that the Company's auditor had expressed substantial doubt about its ability to continue as a going concern.

51. **Her share.** Her 60,000 Units are about 1.64% of the 3,665,139 Units in the 2021 series: pro rata, about 3,300 trees planted and about 2,280 alive at the reported 69.1% survival. She has received no distributions.

52. **Fees.** She was charged custodial and transaction fees caused by the purchase, including a $50 account setup fee (Dec 22, 2021), a $30 incoming wire fee (Jan 24, 2022), and, per NuView's records, a $95 asset purchase fee, a $295 annual asset fee and a $30 wire fee. On information and belief, she was also charged and paid later annual asset fees for this asset in the same amounts as Eric Teschke: $125 (Dec 2023), $125 (Dec 2024) and $325 (Jan 2026). Based on the amounts listed in this paragraph, these fees total approximately $1,075.

53. **Declined further investment.** On June 19, 2023, she wrote to World Tree that "we are not planning to add to our investments."

## VII. RELIANCE, LOSS, LOSS CAUSATION AND TIMELINESS (BOTH PLAINTIFFS)

54. **Reliance.** Each Plaintiff reasonably and justifiably relied on the statements alleged above as to that Plaintiff (Eric Teschke: ¶¶ 27–28, 41–42; Marguerite Teschke: ¶¶ 47–50). The statements were made outside the PPM's boilerplate, by the Company's designated investor-relations representative, who also assured that "whatever is in these documents you can take to the bank." In addition, the omissions alleged in ¶¶ 33–36 concerned facts a reasonable investor would consider important.

55. **Defenses anticipated.** Defendants are expected to rely on the PPM risk factors; Subscription Agreement § 5(g) ("except as set forth herein, no representations or warranties have been made to Subscriber … by the Company or others") (p. 10 of 17); the integration clause (§ 10(g)) (p. 13 of 17); and investor-profile checkboxes. Plaintiffs allege in response: (a) Exchange Act § 29(a), 15 U.S.C. § 78cc(a), voids any provision waiving compliance with the Exchange Act, and Cal. Corp. Code § 25701 does the same for California securities law; (b) generic risk disclosures do not cure specific, contrary assurances given in answer to a direct question; (c) the non-reliance language is boilerplate, not a negotiated disclaimer of the particular representations; and (d) the Operating Agreement itself preserves "legal rights under applicable U.S. federal securities laws."

56. **Loss causation.** The truth was revealed in, among other things, the FY2025 Form 1-K of May 18, 2026, which confirmed that the concealed risks (Manager control, financial instability, and the flow of funds to the Manager) had materialized. There is no market for the Units. At December 31, 2025, the Company reported book equity of $1,442,986 against $18,954,212 of members' equity contributed, an accumulated deficit of $(17,511,226), and cash of $89,301 (FY2025 Form 1-K p. F-4). The Units have no ascertainable value, and neither Plaintiff has received any distribution.

57. **Timeliness.** Neither Plaintiff discovered, and a reasonably diligent investor would not have discovered, the facts constituting the violations, including facts showing scienter, before the FY2025 Form 1-K filed May 18, 2026. Each Plaintiff first suspected a problem at the same time, upon the disclosures in that filing. This action is filed within two years after discovery and within five years after each Plaintiff's purchase of the Units at issue (Eric Teschke: subscriptions of November 18, December 2 and December 8, 2021, the custodian's subscription of January 19, 2022, and funding on February 1, 2022; Marguerite Teschke: subscription on or about January 20, 2022, and purchase on January 31, 2022).

## VIII. CLAIMS FOR RELIEF

*Each count is brought by each Plaintiff separately, on his or her own purchase only.*

### COUNT 1: Exchange Act § 10(b) and Rule 10b-5(a)–(c), 17 C.F.R. § 240.10b-5 (by both Plaintiffs against the Company, WTT and Burton)

58. Plaintiffs incorporate ¶¶ 1–57.

59. In connection with the purchase and sale of a security, and using the means of interstate commerce (email, the internet, video calls and interstate wires), Defendants made untrue statements of material fact; omitted material

facts necessary to make the statements made not misleading; and engaged in a scheme and acts that operated as a fraud on Plaintiffs.

60. The Company and/or WTT had ultimate authority over the statements made by their Investor Support account and investor-relations director. Ms. Burton is alternatively liable under Rule 10b-5(a) and (c) for disseminating false statements with intent to deceive (Lorenzo v. SEC, 587 U.S. 71 (2019)).

61. Defendants acted with scienter. Each Plaintiff relied and suffered economic loss caused by the fraud.

**COUNT 2: Exchange Act § 20(a), 15 U.S.C. § 78t(a) (by both Plaintiffs against WTT and Willmore)**

62. Plaintiffs incorporate ¶¶ 1–61.

63. WTT, as Manager and holder of all voting units, controlled the Company and its investor-relations staff. Mr. Willmore, as CEO, controlled WTT and the Company. Each is jointly and severally liable for the Count 1 violations.

**COUNT 3: Cal. Corp. Code §§ 25401, 25501 (by both Plaintiffs against the Company)**

64. Plaintiffs incorporate ¶¶ 1–57.

65. The Company offered and sold the Units in and from California (Cal. Corp. Code § 25008) by means of written and oral communications that

included untrue statements of material fact and omitted material facts necessary to make the statements made not misleading (§ 25401).

66. Under § 25501, each Plaintiff, who still holds his or her Units, is entitled to rescission (the consideration paid plus interest at the legal rate, less any income received, on tender of the Units through the IRA custodian) or, in the alternative, damages.

**COUNT 4: Cal. Corp. Code §§ 25504, 25504.1 (by both Plaintiffs against WTT, Burton and Willmore)**

67. Plaintiffs incorporate ¶¶ 1–66.

68. **§ 25504.** WTT directly or indirectly controls the Company; Burton was an employee or agent who materially aided the violation; and Willmore is a principal executive officer and control person. Each is jointly and severally liable with the Company.

69. **§ 25504.1.** Each Defendant who materially assisted the violation with intent to deceive or defraud is also liable under § 25504.1.

**COUNT 5 (IN THE ALTERNATIVE): Florida Securities and Investor Protection Act, Fla. Stat. §§ 517.301, 517.211 (by Plaintiff Eric Teschke and Plaintiff Marguerite Teschke, against the Company and Burton)**

70. Plaintiffs Eric Teschke and Marguerite Teschke incorporate ¶¶ 1–57.

71. Eric Teschke was domiciled in Cape Coral, Florida when the Units were offered and sold to him (¶ 6), and Marguerite Teschke was living at her Florida home when the Units were offered and sold to her (¶ 7). Defendants offered and sold the Units to each of them in Florida by email, video call and DocuSign directed to them there. The Units are "securities," and the purchase was an "investment," within Fla. Stat. §§ 517.021 and 517.301.

72. In connection with the offer and sale of a security, Defendants, directly and indirectly, employed a device, scheme or artifice to defraud; obtained his money by means of the untrue statements and omissions alleged in ¶¶ 27–36; and engaged in a course of business that operated as a fraud on each of them (§ 517.301(1)(a)). Section 517.301 applies to securities sold in exempt transactions.

73. The Company sold the Units. Under § 517.211, the Company is liable jointly and severally with every director, officer, partner or agent who personally participated or aided in making the sale, including Ms. Burton, who solicited the sale and made the statements.

74. Each still owns his or her Units and elects rescission, tendering the Units through the IRA custodian and seeking the consideration paid (Eric Teschke, $34,000.00; Marguerite Teschke, $102,000.00), plus interest at the legal rate under Fla. Stat. § 55.03 from the date of purchase, less income

received (none) (§ 517.211(3) (2021), now § 517.211(4)(a)), or, in the alternative, damages.

75. This count is filed within two years after each Plaintiff discovered the facts and within five years of the violation (Fla. Stat. § 95.11(4)(e) (2021), now § 95.11(5)(f)).

**COUNT 6: Common-law fraud and fraudulent concealment (by both Plaintiffs against all Defendants)**

76. Plaintiffs incorporate ¶¶ 1–57.

77. Defendants made the misrepresentations, and concealed the facts, alleged in ¶¶ 27–36, knowing they were false or misleading, intending to induce the purchases, including the family purchase Defendants knew included Eric Teschke's parents (¶ 29).

78. Defendants had a duty to disclose because they made partial statements that were misleading without the omitted facts and had exclusive knowledge of material facts.

79. Each Plaintiff justifiably relied and was damaged.

**COUNT 7: Negligent misrepresentation (by both Plaintiffs against all Defendants)**

80. Plaintiffs incorporate ¶¶ 1–57.

81. Defendants made the misrepresentations without reasonable grounds for believing them true, intending Plaintiffs to rely on them. Each Plaintiff justifiably relied and was damaged.

## IX. PRAYER FOR RELIEF

Each Plaintiff asks for judgment on his or her own claims against Defendants, jointly and severally, for:

A. **Rescission** of that Plaintiff's purchase, on tender of the Units through the IRA custodian, and return of the consideration paid: **Eric Teschke, $34,000.00 (20,000 Units)**; **Marguerite Teschke, $102,000.00 (60,000 Units)**; or, in the alternative, rescissory or compensatory damages in those amounts, less any value the Units are shown to have.

B. **Prejudgment interest** from the date of each purchase (Eric Teschke: February 1, 2022; Marguerite Teschke: January 31, 2022) at the applicable legal rate.

C. Recovery of out-of-pocket **custodial and transaction fees** caused by each purchase (¶¶ 45, 52).

D. An order that any payment to a Plaintiff be made to that Plaintiff's IRA: "Inspira Financial Trust, LLC f/b/o Eric Teschke Roth IRA" (account ending 7237) and "Inspira Financial Trust, LLC f/b/o

Marguerite Teschke Roth IRA" (account ending 7238), or as the Court directs.

E. **Costs of suit**, and reasonable attorney's fees if counsel is later retained, as allowed by statute.

F. Punitive damages on Count 6, as permitted by law (Cal. Civ. Code § 3294).

G. Such other relief as the Court finds just.

## X. DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

## XI. EXHIBITS (redacted copies; last 4 digits of any account number only)

| Ex. | Document |
|---|---|
| 1 | Nov 16–17, 2021 emails: Eric Teschke's insolvency question and the Investor Support/"Angela" reply |
| 2 | Nov 18–19, 2021 emails: "take to the bank"; PPM link; dilution exchange |
| 3 | Subscription Agreements (Nov 18, Dec 2 and Dec 8, 2021; Dec 8 countersigned) and Nov 29, 2021 "80,000 units x $1.70" email; § 3, § 5(g), § 5(i) and § 8 highlighted |
| 4 | Eric Teschke's custodian-signed subscription (Jan 19, 2022), NuView funding notice (Jan 31, 2022), Fee Statement (Feb 4, 2022), Feb 1, 2022 "funds landed" text |
| 5 | Marguerite Teschke's TRANS-657647 purchase authorization and signature page (Jan 2022), NuView "Documents In Good Order" (Jan 28, 2022), NuView holding record (60,000 Units, $102,000) |
| 6 | Dec 17, 2021 NuView "Asset Titling" email (FBO Eric Teschke / FBO Marguerite Teschke) |
| 7 | PPM (Mar 23, 2021) excerpts: 12-month planting; Manager/Series B; going concern; use of proceeds |
| 8 | FY2022 Form 1-K and Forms 1-SA H1 2023 / H1 2024 planting tables |
| 9 | FY2025 Form 1-K excerpts: audit report; Notes 2, 4, 5, 6; survival table |
| 10 | Operating Agreement excerpts: §§ 4.1, 5.6, 5.12 and the forum/jury clause |

| | |
|---|---|
| 11 | Dec 6–8, 2021 and Jan 27, 2022 texts ("all of these promises are in there"; pressure to sign) |
| 12 | May 22, 2023 Willmore email to Marguerite Teschke; Jul 30, 2025 solicitation; Aug 17, 2025 decline |

## XII. SIGNATURES

Each Plaintiff signs for himself or herself only. Neither Plaintiff represents the other. By signing, each Plaintiff certifies under Fed. R. Civ. P. 11(b) that, to the best of his or her knowledge, the factual contentions about his or her own purchase have evidentiary support or are likely to have it after discovery.

Dated: November ___, 2026 11/18/2026

Eric Teschke
Eric Teschke (Nov 18, 2026 20:41:35 EST)

______________________________

**ERIC TESCHKE**, Plaintiff, Pro Se
10373 Harrier St, Plantation, FL 33324
Tel.: (586) 770-2153
Email: erictesch@gmail.com

Dated: November ___, 2026 11/18/2026

Marguerite Teschke
Marguerite Teschke (Nov 18, 2026 20:29:58 EST)

______________________________

**MARGUERITE TESCHKE**, Plaintiff, Pro Se
41766 Westbury Ln, Clinton Township, MI 48038
Tel.: (586) 531-0423
Email: magger53@gmail.com